UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRUSTEES FOR THE MASON TENDERS
DISTRICT COUNCIL WELFARE FUND,
PENSION FUND, ANNUITY FUND AND
TRAINING PROGRAM FUND, *et al.*,

                    Plaintiffs,

-against-

DCM GROUP, LLC,

                    Defendant.

7:13-cv-01925 (NSR)

OPINION AND ORDER

NELSON S. ROMÁN, United States District Judge

      Trustees for the Mason Tenders District Council Welfare Fund, Pension Fund, Annuity Fund and Training Program Fund ("the Funds"), and Robert Bonanza, as Business Manager on behalf of the Mason Tenders District Council of Greater New York (the "Union") (collectively, "Plaintiffs") bring this action pursuant to Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185; Section 502(a)(3), (e)(1) and (f), and Section 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(2), (e)(1), (f) and § 1145; and Section 9 of the Federal Arbitration Act, 9 U.S.C. § 9, against Defendant employer DCM Group, LLC ("Defendant") to confirm and enforce a default opinion and arbitration award rendered pursuant to a collective bargaining agreement between Defendant and the Union on March 22, 2012 by Arbitrator Joseph Harris. The matter is properly before this Court pursuant to 29 U.S.C. § 185, 29 U.S.C. § 1132, and 28 U.S.C. § 1331. Defendant has not opposed Plaintiffs' motion to confirm and enforce the opinion and award. For the following reasons, Plaintiffs' motion is treated as a motion for summary judgement and GRANTED.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/25/2017

**FACTUAL BACKGROUND**[1]

On July 1, 2008, DCM entered into a collective bargaining agreement with the Union (the "CBA"). (*See* Savci Decl. Ex. 2, 39, [hereinafter "CBA"].) The CBA was designed to cover the timeframe of July 1, 2008 through June 30, 2011, and to remain in effect thereafter unless either party indicated a desire to terminate it. (*See id.* art. XII.)

Under the CBA, Defendant is obligated to make weekly contributions to the Funds, which are described as "employee benefit plans" and "multiemployer plans" within the meaning of ERISA Section 3, 29 U.S.C. § 1002 (Compl. ¶ 4.) These contributions were to be made on behalf of covered Union member employees at the rates set forth in the CBA for specific labor performed. (Savci Decl. ¶ 3 ("The purpose of the Funds, among other things is to provide fringe benefit[s] to eligible employees on whose behalf employers contribute to the Funds pursuant to collective bargaining agreements between employers … and the union."); *see, e.g.*, CBA art. VI, §§ 4-7 (requiring employer to make weekly contributions to Trustees of the Welfare, Pension and Annuity Fund, and the Training Program Fund, for work performed).) Through Article VI, Section 15(i) of the CBA, Defendant is also bound to the terms and conditions of the Trust Agreement that established the Funds, and any rules adopted by the Trustees of the Funds to regulate said funds, including the Trust Funds' Arbitration Procedures for delinquent contributions or non-compliance with auditing obligations.

Pursuant to the Trust Agreement,[2] Defendant is required to pay monthly contributions no later than the dates set forth in the CBA, and in all instances, no later than the fifteenth day of the

---

[1] The facts are drawn from Plaintiffs' Complaint (ECF No. 1) and Memorandum of Law in Support of Plaintiffs' Motion (ECF No. 12), and the Declaration of Haluk Savci in Support of Plaintiffs' Motion for Confirmation and Enforcement ("Savci Decl.") and accompanying exhibits (ECF No. 11.)

[2] This separate document, incorporated by reference into the CBA, is entitled "Article IX" "Payments to the Fund," and discusses contributions to the Funds pursuant to CBA.

month immediately following the month during which the work took place).  (*See* Savci Decl. Ex. 3, Article IX - Payments to the Fund § 9.4 [hereinafter "Trust Agreement"].)  In the event that Defendant fails to make the required contributions, an arbitration may be initiated against it pursuant to Section 9.8 of the Trust Agreement and Section II of the Arbitration Procedures.  (*See id*. § 9.8 ("[T]he Board may bring an action on behalf of the Trust Fund … to enforce the employer's obligation to contribute to the Trust Fund…. [and] has the right, in its sole and absolute discretion, to determine whether to initiate arbitration proceedings against a delinquent Employer…"); *id*. § 9.9 (referencing "legal action[s] for Unpaid Contributions commenced by the Trust Fund (and/or the Board…"); Savci Decl. Ex. 4, Arbitration Procedures and Rules Governing Employer Audits and Delinquency Disputes Adopted by Funds § 2 [hereinafter "Arbitration Procedures"] (procedures provided shall govern any arbitration dispute between the Fund and Employer involving claims for delinquent contributions pursuant to Trust Agreement).)  The Trust Agreement and Arbitration Procedures also enable the arbitrator to award unpaid contributions, interest, liquidated damages, attorneys' fees, and costs of the action.  (Trust Agreement § 9.9 (obligating employer to make said payment awards in successful legal action brought by Trust Fund for unpaid contributions); Arbitration Procedures § VI (remedies awarded via arbitration include "those available pursuant to the Trust Agreement, [and] relevant collective bargaining agreement … including interest, liquidated damages and attorneys' fees and costs").)

Upon examination of reports prepared by Union representatives for work performed in the New York area from July 1, 2010, through September 1, 2010, Plaintiffs discovered that DCM owed $96,163 in unpaid benefit contributions, $12,467.15 in unpaid union dues and Political Action Committee contributions ("PAC"),[3] and $4,687.13 in interest on unpaid benefit

---

[3] The Funds are also designated to collect dues and PAC contributions voluntarily authorized by employees.  (Savci Decl. ¶ 10; *see, e.g*., CBA art. VI § 8 (regarding employer's transmission of PAC fees to the Union).)

contributions.  (*See* Savci Decl. ¶ 16; Ex. 5.)  On February 16, 2012, Plaintiffs' counsel sent DCM a Notice of Intent to Arbitrate on behalf of the Trustees for the Funds and the Union.  (*See* Savci Decl. ¶ 17.)[4]  On February 28, 2012, Arbitrator Harris notified the parties by letter that a hearing to adjudicate the matter would be held on March 20, 2012.  (*Id*. ¶ 18; Ex. 7.)  Neither Plaintiffs nor the Arbitrator received a response from DCM.  (*See id*. Ex. 1, 2 [hereinafter "Arbitration Award"].)  DCM did not appear at the arbitration hearing, and the arbitration proceeded as a default hearing, with the Funds submitting testimony and evidence in support of their claim.

The Arbitrator found in favor of Plaintiff, and ordered DCM to pay $96,163 in principal contributions due for fringe benefits, $12,467.15 in dues and Political Action Committee contributions, $4,687.13 in current interest, $19,232.60 in liquidated damages, $500 in legal costs, and $800 in arbitration costs, for a total of $133,849.88.  (*See* Savci Decl. ¶ 21.)  Upon receipt of the award, Plaintiffs forwarded a copy to DCM requesting payment.  (*Id.* ¶ 22.)  Plaintiff commenced this action on March 21, 2013.  In response to this Court's Order to Show Cause as to why this action should not be dismissed for lack of prosecution, dated June 30, 2016, Plaintiffs informed the Court that Defendant had moved its operations to Tennessee, and that they had begun an investigation with the intent to add the Tennessee entity as a party.  (*See* ECF Nos. 7, 8.)  Unable to garner enough information to add the Tennessee entity, Plaintiffs filed the instant motion to confirm and enforce the Arbitrator's Default Opinion and Award.  (*See* ECF No. 8.)  Defendants were given until September 6, 2016 to respond, but did not do so, or appear in this action in any capacity.  (*See* Memo Endorsement, August 4, 2016, ECF No. 13.)

---

[4] The Court notes that the Notice of Intent to Arbitrate reflects that no money was owed for dues and PAC contributions, but that an additional document, which appears to be an invoice for DCM, reflects that $12,467.15 was owed for these items.  (*See* Savci Decl. Ex 5.)  The Arbitrator ultimately awarded the amount specified in the invoice.

4

**DISCUSSION**

Default judgments are "generally inappropriate" in proceedings to confirm arbitration awards. *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006). Instead, a petition to confirm an arbitration award should be "treated as akin to a motion for summary judgment based on the movant's submissions." *Id.*; *accord Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Premium Sys., Inc.*, 2012 WL 3578849, at *2 (S.D.N.Y. Aug. 20, 2012) (converting motion for default judgment seeking to confirm an arbitration award into a summary judgment motion); *Trs. of the N.Y .C. Dist. Council of Carpenters Pension Fund v. Nport Constr. Corp.*, 2012 WL 77872, at *1 (S.D.N.Y. Jan. 10, 2012) ("Where a party fails to respond to a motion for a default judgment in the context of a petition to confirm an arbitration award, the motion for default judgment should be construed as an unopposed motion for summary judgment.").

Even when, as here, a summary judgment motion is unopposed, the moving party must still "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Although the moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact," it may discharge this burden by demonstrating that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case as to which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The non-movant cannot "simply ignore such a motion. If the non-movant does not respond, its failure to contest issues not resolved by the record will weigh against it." *D.H. Blair & Co.*, 462 F.3d at 109. When determining whether the movant has

met its burden, the district court should rely on the record accompanying the motion to confirm. *D.H. Blair & Co.*, 462 F.3d at 109-110.

Notwithstanding this inquiry, the Second Circuit has "repeatedly recognized the strong deference appropriately due arbitral awards and the arbitral process, and has limited its review of arbitration awards in obeisance to that process." *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138 (2d Cir. 2007). "To encourage and support the use of arbitration by consenting parties," the Court "uses an extremely deferential standard of review for arbitral awards." *Id.* at 139. "Further, 'the federal policy in favor of enforcing arbitration awards is particularly strong with respect to … labor dispute[] [arbitrations]'" such as this one. *Supreme Oil Co., Inc. v. Abondolo*, 568 F. Supp. 2d 401, 406 (S.D.N.Y. 2008) (*quoting New York Hotel & Motel Trades Council v. Hotel St. George*, 988 F. Supp. 770, 774 (S.D.N.Y. 1997)). In such cases, "[i]t is only when the arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (internal quotations marks and citations omitted); *see also id.* (holding that courts cannot review the merits of arbitration awards entered into pursuant to an agreement between an employer and a labor organization). For these reasons, confirmation of an arbitration award is generally "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court … and the court must grant the award unless the award is vacated, modified, or corrected." *D.H. Blair & Co.*, 462 F.3d at 110 (2d Cir. 2006) (internal quotation marks and citation omitted); *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008) ("[A] court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected [under § 10 or § 11]." (quoting 9 U.S.C. § 9)).

In a case involving a collective bargaining agreement, "the Court evaluates whether the arbitrator 'acted within the scope of his authority.'" *Trs. of the N.Y.C. Dist. Counsel of Carpenters*, 2013 WL 265084, at *3 (quoting *Local 1199 v. Brooks Drug Co.*, 956 F.2d 22, 25 (2d Cir. 1992)). An award "will be confirmed as long as it 'draws its essence from the collective bargaining agreement.'" *Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor Mgmt. Co-op., Pension & Welfare Funds v. Flooring Experts, Inc.*, 12-CV-6317 (ADS) (AKT), 2013 WL 4042357, at *4 (E.D.N.Y. Aug. 8, 2013), *report and recommendation adopted sub nom. Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Co-op., Pension & Welfare Funds v. Flooring Experts, Inc.*, 2013 WL 4761151 (E.D.N.Y. Sept. 3, 2013) (*citing United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)). Given this standard, the court need only find "a barely colorable justification for the outcome reached" by the arbitrator to confirm an award. *D.H. Blair*, 462 F.3d at 110 (internal citation and quotation marks omitted).

Based upon the record, the Court finds that Plaintiffs have sufficiently demonstrated that there is no question of material fact for trial. Plaintiffs' motion is uncontested, and the CBA and supporting documents attached to the Savci Declaration support Plaintiffs' allegations and the Arbitrator's findings. The CBA clearly requires that Defendant make contributions to the Funds on behalf of the covered Union members it employs. (*See, e.g.*, CBA art. VI §§ 4-7 (requiring employer to make weekly contributions to Trustees of the Welfare, Pension and Annuity Fund, and the Training Program Fund, individually); art. VI § 15(g) ("The Union may withdraw Mason Tenders from any job to enforce payment … of contributions to the Trust Funds").) Additionally, the Trust Agreement and Arbitration Procedures, binding upon Defendant through the CBA, permit the Funds to arbitrate disputes involving delinquent payments. (*See* Trust Agreement § 9.8 ("[T]he Board may bring an action on behalf of the Trust Fund … to enforce the employer's

obligation to contribute to the Trust Fund…. [and] has the right, in its sole and absolute discretion, to determine whether to initiate arbitration proceedings against a delinquent Employer…"); Arbitration Procedures § 2 (indicating procedures set forth in document would apply to disputes between Funds and Employer involving claims for delinquent contributions referred to arbitration).) Finally, the Trust Agreement and Arbitration Procedures permit an arbitrator who finds in favor of the Funds to award the damages and payments sought by Plaintiff. (Trust Agreement § 9.9; Arbitration Procedures § VI.)

Furthermore, the Court finds that the Arbitrator's Award is appropriate. After reviewing written evidence and testimony,[5] Arbitrator Harris determined that Defendant was delinquent in its payments. (*See* Arbitrator's Award, 2.) Through this evidence, the Arbitrator deduced the amount owed by Plaintiff, and fashioned a remedy specifically provided for under the CBA. Although the Arbitrator's Award does not involve a detailed calculation of the award, given the numerical breakdown provided, and the record, the Court finds more than "a barely colorable justification for the outcome reached" by the Arbitrator. *See United Steelworkers of Am.*, 363 U.S. at 598 ("Arbitrators have no obligation to the court to give their reasons for an award."); *see also Trustees for the Mason Tenders Dist. Council Welfare Fund, Pension Fund, Annuity Fund, & Training Program Fund v. Nacirema Envtl. Servs. Co.*, 13-CV-3574 (SAS), 2015 WL 1026695, at *1 (S.D.N.Y. Mar. 9, 2015) (finding for identical plaintiffs where motion unopposed, "the CBA and the supporting documents attached to [counsel's declaration] corroborate[d] petitioners' allegations … the arbitrator sufficiently justified his conclusion based on the straightforward and unrefuted evidence … [and] the ground for the arbitrator's decision [could] be inferred from the

---

[5] Evidence and testimony included shop steward reports from auditors following an examination of DCM's books and records, as well as testimony from the Funds Delinquency Manager. (Savci Decl. ¶ 20; *see* Arbitration Award, 2.)

8

facts of th[e] case"). Lastly, there is no contention that the arbitrator exhibited a manifest disregard, or any other reason why Plaintiffs' motion to confirm should be denied. *Trustees of N.Y. City Dist. Counsel of Carpenters, Pension Fund, Welfare Fund, Annuity Fund, Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund, Charity Fund v. Exec. Millwork Corp.*, 11-CV-6264 (LTS), 2013 WL 265084, at *4 (S.D.N.Y. Jan. 22, 2013).

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to confirm and enforce the March 22, 2012 Default Opinion and Award of Arbitrator Joseph Harris is treated as a motion for summary judgment and GRANTED. Plaintiffs are entitled to $96,163 in principal contributions, $12,467.15 in dues and Political Action Committee contributions, $4,687.13 in current interest, $19,232.60 in liquidate damages, $500 in legal costs, and $800 in arbitration costs, for a total of $133,849.88. The Court respectfully directs the Clerk of Court to terminate the motion at ECF No. 10 and to close the case.

Dated: January 25, 2017  
       White Plains, New York

SO ORDERED:

NELSON S. ROMÁN  
United States District Judge